UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNMASKED MANAGEMENT, INC, LUCHA LIBRE GOURMET TACO SHOP #1 LP, LUCHA LIBRE GOURMET TACO SHOP #2 LP, LUCHA LIBRE GOURMET TACO SHOP #3 LP, individually and on behalf of all others similarly situated,<br><br>                                   Plaintiffs,<br><br>v.<br><br>CENTURY-NATIONAL INSURANCE COMPANY,<br><br>                                   Defendant. | Case No.: 3:20-cv-01129-H-MDD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 16.] |

On June 19, 2020, Plaintiffs Unmasked Management, Inc, Lucha Libre Gourmet Taco Shop #1 LP, Lucha Libre Gourmet Taco Shop #2 LP, and Lucha Libre Gourmet Taco Shop #3 LP (collectively, "Plaintiffs") filed a class action complaint against Defendant Century-National Insurance Company ("Defendant"). (Doc. No. 1.) On October 22, 2020, Defendant filed a motion to dismiss the complaint for failure to state a claim. (Doc. No. 11.) In lieu of responding to Defendant's motion to dismiss, Plaintiffs filed a first amended

complaint (the "FAC") on November 9, 2020. (Doc. No. 14.) Accordingly, the Court denied Defendant's motion to dismiss as moot. (Doc. No. 15.)

On November 20, 2020, Defendant filed a motion to dismiss the FAC. (Doc. No. 16.) Plaintiffs filed a response in opposition to Defendant's motion to dismiss on December 9, 2020. (Doc. No. 22.) Defendant filed a reply on December 14, 2020. (Doc. No. 23.) Defendant also filed a notice of supplemental authority in support of its motion to dismiss on January 8, 2021. (Doc. No. 25.) On January 15, 2021, and then again on January 21, 2020, Plaintiffs filed their own notices of supplemental authority in support of their opposition. (Doc. Nos. 27, 28.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 26.) For the following reasons, the Court grants Defendant's motion to dismiss.

## **Background**[1]

Plaintiffs own and operate several restaurants in San Diego and Carlsbad, California. (Doc. No. 14 ¶ 1.) Plaintiff Unmasked Management, Inc. ("Unmasked") is the manager and managing agent for the remaining named plaintiffs in this action, Lucha Libre Gourmet Taco Shop #1 LP, Lucha Libre Gourmet Taco Shop #2 LP, and Lucha Libre Gourmet Taco Shop #3 LP (collectively, the "Limited Partnership Plaintiffs"). (Id. at 1 n.1.) Unmasked purchased an insurance policy (the "Policy") from Defendant for its three restaurants, with a policy period spanning from July 14, 2019 to July 14, 2020. (Id. ¶ 14; see also Doc. No. 14-1, Ex. A.)[2] The Policy lists the named insured as "Unmasked Management, Inc. DBA: Lunch Libre Gourmet Taco Shop #1, #2, & #3." (Doc. No. 14-1, Ex. A.) The Limited Partnership Plaintiffs were later added as named insureds to the Policy on May 26, 2020. (Doc. No. 14-2, Ex. B.)

The Policy contains the following four provisions pertinent to this lawsuit. First, the policy includes a "Business Income" provision, which provides that Defendant "will pay

---

[1] The following allegations are taken from Plaintiffs' FAC unless otherwise provided.
[2] The Court may consider the Policy in ruling on Defendant's motion to dismiss because Plaintiffs attached the Policy their FAC. United States v. Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011).

for the actual loss of business income . . . sustain[ed] due to the necessary 'suspension' of [Plaintiffs'] 'operations.'" (Doc. No. 14-1, Ex. A.)  Under this provision, coverage will only attach if the suspension was "caused by direct physical loss of or damage to" the covered property. (Id.)  Second, the Policy includes an "Extra Expense" provision, which provides coverage for certain expenses incurred during the "suspension" of Plaintiffs' operations. (Id.)  This provision only applies, however, if the Business Income coverage provision applies in the first place. (Id.)  Third, the Policy includes a "Civil Authority" provision, which provides that Defendant "will pay for the actual loss of Business Income . . . sustain[ed] and necessary Extra Expense caused by [an] action of civil authority that prohibits access to the [covered] premises due to direct physical loss of or damage to property, other than at the [covered] premises." (Id.)  Fourth, the Policy provides that, in the event of a covered cause of loss, Plaintiffs must "[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." (Id.) Plaintiffs refer to this coverage provision as a "Sue and Labor" provision. (Doc. No. 14 ¶ 6.)

In early 2020, both the State of California and the County of San Diego issued various orders in response to the COVID-19 pandemic (the "Closure Orders"). (Id. ¶¶ 27-32.)  On March 4, 2020, Governor Gavin Newsom issued an executive order declaring a state of emergency and requiring that California residents follow further guidance related to social distancing promulgated by the California Department of Health. (Id. ¶ 28.)  On March 16, 2020, San Diego County issued an order that prohibited dine-in eating and closed all bars in the county. (Id. ¶ 29.)  On March 19, 2020, Governor Newsom issued another executive order requiring all individuals who do not participate in "Essential Critical Infrastructure" to stay in their respective residences. (Id. ¶ 30.)  Plaintiffs' restaurants were considered essential under these orders, allowing them to remain open in

a limited capacity.  (Id.)[3]

Plaintiffs allege that they suffered losses resulting from the COVID-19 outbreak, the Closure Orders, and the presence of COVID-19 in their restaurants.  (Id. ¶ 33.)  Plaintiffs contend that the Closure Orders prohibited Plaintiffs from using their indoor dining rooms.  (Id. ¶ 36.)  Further, Plaintiffs allege that they had to alter their premises in several ways to socially distance their guests and otherwise limit the potential spread of COVID-19.  (Id. ¶¶ 34-36.)  For example, Plaintiffs expanded their outdoor dining areas, installed plexiglass to separate guests and employees, re-arranged their furniture and salsa bars, added custom signage and hand sanitizing stations, and installed shelving to accommodate take-out orders, among other things.  (Id.)

Plaintiffs filed a claim under the Policy to recover their losses caused by the Closure Orders and COVID-19.  (Id. ¶ 41.)  Defendant denied that claim on April 21, 2020. (Doc. No. 16, App'x, at 27-29.)[4]  Defendant took the position that Plaintiffs were not covered because: (1) "[t]he Suspension of [their] business was not caused by a 'Direct Physical Loss of or Damage to Property' at [the] designated premises"; and (2) "[t]he Government Directives at issue did not 'Prohibit Access' to [the] designated premises and did not result from a Loss or Damage at a premises 'Other Than' [the] designated premises." (Id. at 28-

---

[3] Defendant requested judicial notice of the Closure Orders. Under Federal Rule of Evidence 201, a court "may take judicial notice of the records of state agencies and other undisputed matters of the public record," Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 (9th Cir. 2004), including actions or orders of the California Governor, Armstrong v. Newsom, No. CV 20-3745-GW-ASX, 2020 WL 5585053, at *1 (C.D. Cal. Aug. 3, 2020). Accordingly, the Court grants Defendant's request for judicial notice of the Closure Orders.  The Court notes, however, that it also may rely on the Closure Orders because "(1) the [FAC] refers to the [them]; (2) the [Closure Orders are] central to the plaintiff's claim; and (3) no party questions the authenticity of the[m]." Corinthian Colleges, 655 F.3d at 999.

Further, both parties request judicial notice of various unpublished judicial orders in support of their moving papers. (Doc. No. 16-1, at 2-3; Doc. No. 22 at 18 n.5.) Since the Court does not rely on any of these orders, the Court denies these requests as moot.

[4] The Court can consider Defendant's denial of Plaintiffs' insurance claims, even though it was not attached to the FAC, because "(1) the [FAC] refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." Corinthian Colleges, 655 F.3d at 999.

29.) Plaintiffs then filed the instant putative class action against Defendant, alleging breach of contract and declaratory judgment claims against Defendant arising out of the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Policy. (Doc. No. 14, FAC.)  On November 20, 2020, Defendant moved to dismiss the FAC under Rule 12(b)(6).  (Doc. No. 14.)

## Discussion

**I.     Legal Standards**

**A.     Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court must assume the plaintiff's factual allegations as true and construe all reasonable inferences in favor of the plaintiff.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  That being said, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (citation omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See DeSoto, 957 F.2d at 658.

**B.     California Insurance Law**

Since federal jurisdiction in this action is based on diversity of citizenship, the substantive law of California governs. Stanford Univ. Hosp. v. Fed. Ins. Co., 174 F.3d

1077, 1083 (9th Cir. 1999); Humboldt Bank v. Gulf Ins. Co., 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). In California, the interpretation of an insurance policy is a question of law for the court. Powerine Oil Co., Inc. v. Superior Court, 118 P.3d 589, 597 (Cal. 2005). Such interpretation must give effect to "the mutual intention of the parties at the time the contract is formed . . . ." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 627 (Cal. 1995). To determine the intent of the parties behind an insurance contract, the Court "look[s] first to the language of the contract in order to ascertain its plain meaning," reading the language in its "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." Id. (internal citations and quotation marks omitted). Language in an insurance contract "must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Id.

"Insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1213 (Cal. 2003) (citations omitted). When there is ambiguity in an insurance policy, the policy's exclusions and exceptions are strictly construed against the insurer and liberally interpreted in favor of the insured to protect the insured's reasonable expectation of coverage. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 884 P.2d 1048, 1053 (Cal. 1994); see also Delgado v. Heritage Life Ins. Co., 203 Cal. Rptr. 672, 677 (Ct. App. 1984). Any limitation of coverage must be "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." Haynes v. Farmers Ins. Exch., 89 P.3d 381, 385 (Cal. 2004). Nevertheless, "[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co., 78 Cal. Rptr. 2d 429, 432 (Ct. App. 1998) (citing Legarra v. Federated Mutual Ins. Co., 42 Cal. Rptr. 2d 101, 105 (Ct. App. 1995)).

//
//
//

## II. Whether the Policy Covers Plaintiffs' Losses

### A. Business Income and Extra Expense Coverage

The Court first turns to whether Plaintiffs have adequately stated a claim under the Business Income and Extra Expense coverage provisions of the Policy. In relevant part, the Policy's Business Income coverage provision provides the following: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at [the covered premises] . . . ." (Doc. No. 14, Ex. A.) The Extra Expense coverage provision applies only if the Business Income coverage provision applies in the first place. (Id.) In pertinent part, it provides the following:

> We will pay Extra Expense (other than the expense to repair or replace property) to: (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location. (2) Minimize the "suspension" of business if you cannot continue "operations." We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

(Id.)

Defendant argues that neither coverage provision applies here because Plaintiffs have failed to allege that their losses were caused by a "direct physical loss of or damage to" property. (Doc. No. 16 at 6-7.) Plaintiffs, on the other hand, allege that the Closure Orders and the spread or presence of the COVID-19 virus caused the loss of the use and functionality of their property, (Doc. No. 14 ¶ 34), which they argue meets the Policy's "direct physical loss of or damage to" requirement, (Doc. No. 22 at 5-14).

Physical loss or damage coverage limitations are commonplace in modern insurance policies. MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co., 115 Cal. Rptr. 3d 27, 37 (2010). Under California law, they generally require that there be a "distinct, demonstrable, physical alteration" to the property for coverage to attach. Id. at 38. "A

direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" Id. at 38 (citation omitted). In other words, "some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., [the property] must have been 'damaged' within the common understanding of that term." Id.

The loss of use or functionality of the covered property alone is not sufficient to trigger coverage. See id. at 37; see also Doyle v. Fireman's Fund Ins. Co., 229 Cal. Rptr. 3d 840, 844 (Ct. App. 2018) ("[W]hen it comes to property insurance, diminution in value is not a covered peril, it is a measure of a loss.") For example, in MRI Healthcare, the California Court of Appeal held that an MRI machine's inability to function properly after it was powered down did not constitute a "direct physical loss." 115 Cal.Rptr.3d at 38-39. Similarly, Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co., 7 Cal. Rptr. 3d 844, 850-51 (2003), as modified on denial of reh'g (Jan. 7, 2004), held that the loss of electronic information in a database did not to qualify as a direct physical loss absent a showing that there was damage to tangible property. Further in Doyle, the court held that an insured's financial loss resulting from the purchase of counterfeit wine was not covered by his property insurance policy because the wine was never stolen, destroyed, or physically altered. 229 Cal. Rptr. 3d at 843-44.

Here, "Plaintiff[s'] FAC attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage." 10E, LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4–5 (C.D. Cal. Sept. 2, 2020). Plaintiffs are not the first to contend that their temporary and partial loss of use or functionality of their property resulting from the Closure Orders and the COVID-19 pandemic constitutes a "direct physical loss of or damage to" that property. Courts applying California law have all but universally rejected these attempts as lacking the requisite "distinct, demonstrable,

physical alteration" necessary to show physical loss or damage. See, e.g., Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos, No. CV 20-3619 PSG (EX), 2020 WL 6156584, at *4-5 (C.D. Cal. Oct. 19, 2020); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., No. 20-CV-03213-JST, 2020 WL 5525171, at *3-5 (N.D. Cal. Sept. 14, 2020); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020); 10E, 2020 WL 5359653, at *4-5. In fact, Plaintiffs point to no citable authority applying California law holding these allegations are sufficient to state a claim under a policy with a similar physical loss clause. Accordingly, to the extent that Plaintiffs argue that they are entitled to coverage for the loss of use or functionality of their property as a result of the Closure Orders or the COVID-19 pandemic at large, they fail to plead a "distinct, demonstrable, physical alteration," as required under the Policy and California law. See MRI Healthcare, 115 Cal.Rptr.3d at 38.

Plaintiffs attempt to evade this physical alteration requirement expounded in MRI Healthcare, relying on a federal district court's interpretation of a similar policy in Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am., No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018). (Doc. No. 22 at 8.) In Total Intermodal, as here, the insurance policy provided for coverage only if the insured could show a "direct physical loss of or damage to [the covered premises]." 2018 WL 3829767, at *3-4. The district court distinguished this language from that of the policy involved in MRI Healthcare, which required "direct physical loss to business personal property," because the preposition "of" and the addition of the words "or damage to" in the clause in the Total Intermodal case rendered the provisions materially different. Total Intermodal, 2018 WL 3829767, at *4. As the court reasoned, coverage would attach either if the plaintiff could show a "direct physical loss of" or "direct physical damage to" the covered premises. See id. at *3-4; see also Ward, 7 Cal. Rptr. 3d at 849 (construing "'direct physical' to modify both 'loss of' and 'damage to'"). The Total Intermodal court then explained that the "direct physical loss of" requirement could be met absent any physical alteration to the covered

property if the insured was "permanent[ly] disposess[ed]" of that property. 2018 WL 3829767, at *4.

Even if the Court were to adopt Total Intermodal's reading, however, Plaintiffs' claims would nonetheless not be saved from dismissal because Plaintiffs do not allege a permanent deprivation of their property in this case. Plaintiffs allege that only portions of their business premises became unusable for certain purposes for a temporary period. (See Doc. No. 14 ¶¶ 30, 36.) After all, their restaurants were considered "Essential Critical Infrastructure" and were, therefore, allowed to remain open and serve customers in a limited capacity. (Id.) Notably, the judge who authored the Total Intermodal decision likewise distinguished Total Intermodal on the grounds that a permanent deprivation of property was not alleged in a similar COVID-19 insurance action. See Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *4-5 (C.D. Cal. Oct. 2, 2020). For these reasons, Total Intermodal does not apply under the circumstances. See, e.g., Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am., No. 220CV08478JWHRAOX, 2020 WL 7769880, at *3 (C.D. Cal. Dec. 30, 2020) (refusing to apply Total Intermodal in COVID-19 business interruption case where no permanent deprivation was alleged); Mudpie, 2020 WL 5525171, at *3-5 (same); Pappy's Barber Shops, 2020 WL 5500221, at *5 (citation omitted) (same); 10E, 2020 WL 5359653, at *4-5 (same). Accordingly, Plaintiffs must show a "distinct, demonstrable, physical alteration" to property for coverage to attach.

Plaintiffs finally argue that, even if a physical alteration is required, the physical presence of COVID-19 in the air and on the surfaces of their property is sufficient to meet such a requirement. (Doc. No. 22 at 10.) Plaintiffs allege that at least one of their employees tested positive for COVID-19, which, according to Plaintiffs, makes it "medically certain" that the virus would have been present on their property. (Doc. No. 14 ¶ 37.) And, as they explain, this physically altered their property because "COVID-19 particles, though unseen, structurally alter their environment in a manner that causes loss

and damage by rendering affected premises dangerous to human health." (Doc. No. 22 at 10.)

Even assuming, *arguendo*, that these allegations demonstrate the presence of COVID-19 in Plaintiffs' businesses, the Court is not persuaded that such allegations demonstrate a physical alteration to Plaintiffs' property, as is required by the Policy. Notably, Plaintiffs rely almost entirely on cases that do not involve California law in making this argument. (Doc. No. 22 at 10-12.) Critically, too, the Court is aware of no authority wherein a court applying California law has held that the mere presence of COVID-19 in or on one's business premises is sufficient to constitute physical loss or damage. In fact, at least two federal district courts applying California law have held the opposite. Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("[T]he presence of the virus itself, or of individuals infected the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property."); O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co., No. 20-CV-02951-MMC, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) (same).

The Court agrees with Defendant that allegations showing the alleged presence of COVID-19 in or on the covered property are not sufficient to trigger coverage when direct physical loss of or damage to property is required. If, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result. After all, disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces. O'Brien, 2021 WL 105772, at *4 (holding that COVID-19 does not physically alter property merely by being present on it because it can be easily disinfected); Uncork & Create LLC v. Cincinnati Ins. Co., No. 2:20-CV-00401, 2020 WL 6436948 (S.D.W. Va. Nov. 2, 2020) ("[E]ven [the] actual presence of the [COVID-19] virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care,

eliminates the virus on surfaces, there would be nothing for an insurer to cover . . . ."); see also Mama Jo's, Inc. v. Sparta Ins. Co., No. 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018), aff'd, 823 F. App'x 868 (11th Cir. 2020) ("The fact that the restaurant needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical loss or damage . . . ."). The presence of COVID-19, therefore, could not have "damaged" Plaintiffs' property "within the common understanding of that term." MRI Healthcare, 115 Cal.Rptr.3d at 38. The FAC, accordingly, fails to allege sufficient allegations demonstrating that Plaintiffs' business losses resulted from a "direct physical loss of or damage to" property, which is necessary for Busines Income and Extra Expense coverage under the Policy. Thus, the Court grants Defendant's motion to dismiss Plaintiffs' various claims under these provisions.

### B.     Civil Authority Coverage

The Court then turns to the Policy's Civil Authority provision. This provision appears within the Policy's Business Income and Extra Expense coverage form under the heading "Additional Coverages." (Doc. No. 14, Ex. A.) It provides the following:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

Id. The parties appear to agree that the Closure Orders constitute acts of civil authority. Thus, at issue here is (1) whether Plaintiffs have demonstrated that the Closure Orders "prohibit[ed] access" to the covered premises and (2) whether this prohibition was "due to direct physical loss or damage to property, other than at the [covered] premises."

Here, Plaintiffs have not adequately alleged that the Closure Orders were issued "due to" the loss of or damage to other properties. In the first place, for the same reasons that the FAC fails to allege a direct physical loss of or damage to Plaintiffs' own property, the FAC also fails to allege physical loss or damage to property elsewhere. Further, even assuming that damage or loss did occur to other properties as a result of the COVID-19

pandemic, Plaintiffs fail to allege facts showing a plausible causal link between that property loss and the Closure Orders. Plaintiffs' FAC merely states that the "Closure Orders were issued in response to the rapid spread of COVID-19 throughout California." (Doc. No. 14 at ¶ 31.)  Nowhere in any of the Closure Orders themselves is property loss or damage discussed as a rationale for their issuance.  To the contrary, the Closure Orders repeatedly provide that they were issued to preserve the health and safety of California and San Diego residents, respectively, by limiting the spread of COVID-19.  (See, e.g., Doc. No. 16-1, Ex. 2 ("This Order will reduce the likelihood that many individuals will be exposed to COVID-19 and will thereby slow the spread of COVID-19 in the county."); id. Ex. 3 (stating, repeatedly, that the order was intended "[t]o preserve the public health and safety").)  Accordingly, Plaintiffs fail to allege sufficient facts to show that they are entitled to Civil Authority coverage.  Mudpie, 2020 WL 5525171, at *7 ("Because the [closure] orders were preventative—and absent allegations of damage to adjacent property—the complaint does not establish the requisite causal link between prior property damage and the government's closure order.").  The Court, therefore, grants Defendant's motion to dismiss Plaintiffs' claims arising under the Civil Authority provision of the Policy.

### C. Sue and Labor Coverage

Defendant also argues that Plaintiffs fail to allege facts showing their entitlement to coverage under the Policy's Sue and Labor provision. (Doc. No. 16 at 22.)  This provision creates a duty on the part of Plaintiffs to preserve the covered property should a covered cause of loss occur. (Doc. No. 14, Ex. A.)  Thus, because Plaintiffs failed to state a claim for coverage under the Business Income, Extra Expense, and Civil Authority provisions of the Policy, Plaintiffs likewise fail to state a claim under the Sue and Labor provision. The Court, therefore, grants Defendant's motion to dismiss Plaintiffs' Sue and Labor claims.[5]

//

---

[5] Because the Court ultimately dismisses each of Plaintiffs' claims in this action, it need not separately rule on the issue of whether the Limited Partnership Plaintiffs have standing to assert these claims in the first place.

## Conclusion

The Court sympathizes with Plaintiffs and other businesses that suffered financial hardships in the wake of the COVID-19 pandemic. Nevertheless, the issue before the Court is whether Plaintiffs' alleged losses are covered by the Policy, which they are not. The Court, therefore, grants Defendant's motion to dismiss and dismisses the action. Because the allegations of additional facts would not cure the FAC's deficiencies, the Court's dismissal is with prejudice and without leave to amend. The Court directs the Clerk to close the case.

**IT IS SO ORDERED.**

DATED: January 22, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT